# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEROY KENNEDY, ) | |
| ) | No. |
| Plaintiff, ) | |
| ) | |
| v. ) | Hon. Judge |
| ) | |
| CITY OF CHICAGO and CITY OF CHICAGO ) | |
| POLICE OFFICER J. RIDGNER STAR NO. 5144, ) | Hon. Magistrate |
| and N. ABRAMSON Star No. 13605 ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | JURY DEMANDED |
| ) | |

## COMPLAINT

NOW COMES the Plaintiff, LEROY KENNEDY ("Leroy" or "Plaintiff"), by and through his attorneys, Christopher Smith Trial Group, LLC, and complaining of the Defendants City of Chicago Police Officers Jonathan Ridgner Star No. 5144, and N. ABRAMSON Star No. 13605 ("Officers" or "Defendants"), states as follows:

## INTRODUCTION

1. This is a civil action seeking damages against Defendants for committing acts under color of law and depriving Plaintiff of rights secured by the Constitution and for tortious conduct which violates the laws of the state of Illinois. Herein, Plaintiff brings claims for excessive force, false arrest, violation of due process, failure to intervene and malicious prosecution.

## JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C., § 1983, and § 1985; the judicial code 28 U.S.C., § 1331 and 1343 (a); the Constitution of

the United States.

## PARTIES

3. Plaintiff, Leroy Kennedy ("Leroy" or "Plaintiff") is a citizen of the United States of America, who currently resides in Cook County, IL.

4. Defendant City of Chicago Police Officers Jonathan Ridgner Star No. 5144, and N. ABRAMSON Star No. 13605 ("Defendants" or "Officers") were at the time of this occurrence duly licensed Chicago Police Officers. They engaged in the conduct complained of while on duty in the course and scope of their employment and under color of law. They are sued in their official and individual capacities.

## BACKGROUND

5. Leroy Kennedy, a black male, was minding his own business on the sidewalk on August 23, 2020 in West Chicago at approximately 5:45 p.m.

6. Body camera footage shows Defendant Officer Ridgner run up behind Mr. Kennedy.

7. Mr. Kennedy was not breaking any laws.

8. Defendant Ridgner grabbed Mr. Kennedy's body, while Defendant Officer Abramson grabbed Mr. Kennedy's wrist.

9. Defendant Ridgner slammed Mr. Kennedy into a brick wall, before taking Mr. Kennedy down and slamming his head into the pavement more than once.

10. Defendants Ridgner and Abramson then put Mr. Kennedy in a squad car.

11. Shocked and indignant witnesses began filming the police and verbally confronting them about their lawless actions.

12. Defendant Abramson can be heard screaming obscenities back at the crowd and

threatening that "someone is going to catch a body."

13. Left on his own, Mr. Kennedy filmed the ongoing police activity with his phone.

14. Eventually Defendant Officers Ridgner and Abramson searched Mr. Kennedy, found nothing, but handcuffed him anyway.

15. Defendants conspired amongst each other about what to do.

16. In an illegal effort to justify their frightening attack on Mr. Kennedy, the Defendant Officers created false reports that claimed Mr. Kennedy committed multiple felony batteries against them.

17. Defendant Officers had no lawful basis to stop Mr. Kennedy at all.

18. In their own words, Defendants claimed that they approached Mr. Kennedy because he "look directly in r/o's direction and stiffen his body (locking his shoulders and torso) and his eyes enlarge, meaning his eyebrows rose which produced a shocked look on his face."

19. Defendants had Mr. Kennedy charged with multiple counts of Aggravated Battery.

20. Mr. Kennedy was taken to the hospital for the injuries to his head and wrist.

21. Defendants' misconduct put Mr. Kennedy in Cook County jail for roughly four days and house arrest for an additional two weeks.

22. All charges were dismissed on December 18, 2020 after video evidence showed there was no case against the Plaintiff.

23. As a result of the false arrest, illegal search, excessive force, and malicious prosecution, Plaintiff suffered damages, including but not limited to pain and suffering, and emotional injuries.

## Count I
### 42 U.S.C. Section 1983
### Fourth Amendment – *Monell* Against City of Chicago

24. Chicago Police Officers treat Chicago's South and West sides as if the people who live there are enemy combatants.

25. This *de facto* policy contributes to an 'anything goes' practice, that causes substantial and ongoing harm to large portions of Chicago's communities of color.

26. Chicago police officers barely even go through the motions of justifying their behavior; often their reports are contradicted by video evidence.

27. The justifications used by officers for vigilante style violence and lawlessness, (for example in this case, that Plaintiff's eyes grew big) play on bigoted stereotypes and would be totally unacceptable in Chicago's more affluent and whiter communities.

28. Neighborhood witness are not treated like witnesses; their accounts are never sought, and they often suffer verbal and physical abuse for being present.

29. The casual contempt that the Chicago Police Department has for minorities and witnesses, especially Black men, can be seen repeatedly on body camera footage that officers know is being recorded.

30. For example, in the recent case of *Armani Russell v. City of Chicago et. al*, a supervisor is recorded giving officers arriving on the scene orders to grab everyone. In that case, another officer repeatedly calls a Black bystander "boy".

31. In *Gibson v. City of Chicago, et. al,* the defendant officer brutally attacks the plaintiff on camera for attempting to squirm out of the police car, and punches a bystander/witness in the face for objecting to the beating. Officers can be heard mocking bystanders, challenging one witness to "whip it out."

4

32. In *Elam v. City of Chicago,* the defendants shot a young man three times in the back, which killed him. The shooter's body camera was not turned on. The defendants hid the details of the of the car chase, and the nature of the shooting. On video, the defendants and other officers did not treat civilians in the area like potential witnesses and told them to go away after the shooting. On video, the officers franticly searched the young man for a weapon instead of calling for an ambulance—while the young man was still alive.

33. Defendants' creation of false police reports, false charges, and excessive force, making false charges, treating the citizens of the South and West sides of the City as though they do not have civil rights, and failure to intervene, were all undertaken and caused pursuant to the policy, practice, and custom of Defendant City of Chicago's Police Department.

34. These *de facto* policies, practices, and customs were the moving force behind Plaintiff's injuries.

35. In this case, the "Code of Silence", the failure to discipline, and custom of dishonesty and cover-up, and the practice of routine excessive force were among he strongest contributing *de facto* policies, practices, and customs.

36. In establishing its procedures, Defendant City of Chicago has a duty under the Fourth and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing in effect policies and procedures that create a substantial likelihood that persons, such as Plaintiff, would be subjected to by Defendant City of Chicago's Police Officers' misconduct.

37. Likewise, Defendant City of Chicago has a duty to refrain from enforcing or continuing in effect policies and procedures that cause persons, such as Plaintiff, to be treated with reckless indifference by its agents, servants and employees.

38. At all times material to this complaint the Defendant City of Chicago and its Police Department, Superintendents, C.O.P.A., I.P.R.A., I.A.D., Personnel Division and/or Police Board had interrelated defacto policies, practices, and customs that were the moving force of the misconduct described in this Complaint.

39. Defendants' misconduct was undertaken pursuant to one or more interrelated defacto policies, practices and/or customs of the City of Chicago, its Police Department, Police Board, C.O.P.A, I.P.R.A., I.A.D., Personnel Division, and/or Superintendents are guilty of one or more of the following wrongfully acts or omissions:

   a. failing to properly hire, train, supervise Police Officers;
   b. failing to properly train and supervise Chicago Police Officers with regard to discharging their weapons at civilians;
   c. refusing to supervise, reprimand, discipline, transfer, monitor, counsel and/or otherwise control Police Officers who engage in misconduct contrary to the laws, rules and regulations, thus condoning the use of excessive force; thereby leading City Of Chicago Police Officers to believe their actions will never be scrutinized and in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, City Of Chicago Police Officers accused of excessive force can be confident that the Independent Police Review Authority will not adequately investigate those accusations and will refuse to recommend discipline even where the Officer has engaged in excessive force;
   d. failing to retrain and/or otherwise control Police Officers who engage in wrongful excessive force and/or unjustified shootings against civilians;
   e. failing to establish appropriate policies and procedures to address and correct the repeated use of excessive force by Police Officers in traffic stops;
   f. inadequately and/or failing to independently and adequately investigate complaints or allegations of excessive force and of other types of misconduct by fellow Police Officers, including the use of excessive force against civilians to protect fellow officers from disciplinary, criminal and civil actions in violation in civilian rights and privileges;
   g. covering up the criminal and/or wrongful activities of fellow Police Officers, by falsely reporting, falsely or improperly investigating, committing perjury and being dishonest in violation of the rights and privileges of civilians including Plaintiff;
   h. tacitly approving of law enforcement officers using their power and position to interfere with other citizens' rights, including the right to be

      free of interference with their right of association with their right to be free in their bodily integrity, and security in their persons;

    i. allowing the continuance in force and effect of policies and procedures which resulted in the use of outrageous and excessive force against civilians, including Plaintiff;

    j. as a matter of both policy and practice, the City of Chicago Police Department facilitates the very type of misconduct at issue here by failing to protect civilians from reckless indifference of defendant city's agents, servants, and employees in its Police Department;

    k. failing to, as a matter of express policy of Defendant City Of Chicago to retain any records which are more than five years old documenting allegations of excessive force against police officers, thereby preventing Defendant City Of Chicago from ascertaining any patterns of abuse which might develop over the course of a police officer's career;

    l. allowing the policy, practice, and custom of a "police code of silence" resulting in police officers refusing to report instances of police misconduct of which they are aware, including the unjustified discharge of an officer's weapon, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, in cases where they and their fellow officers have used excessive force and/or engaged in unjustified shootings of civilians;

40. Defendant Jonathan Ridgner Star No. 5144 knew that even if he went berserk—which he did; going as far as slamming a man into the ground whom he had no reason to stop—fellow officers would back him no matter what.

41. No officer involved in this incident has ever contradicted Defendant Jonathan Ridgner Star No. 5144's false reporting. Instead, they choose to back an out-of-control officer over what their eyes told them must be true.

42. Indeed, in every case listed above no officer intervenes in the misconduct or it's investigatory aftermath to tell the truth.

43. Defendant Jonathan Ridgner Star No. 5144 knows that he can write false reports all day long and everyone in the department will back him.

44. In this case, the misconduct was so blatant, that after Cook County prosecutors reviewed the video and the reports, the charges against the Plaintiff were dropped.

45. Defendant Jonathan Ridgner Star No. 5144 also knew, what most everyone in Chicago knows, that barely one in twenty civilian complaints result in any form of discipline or reprimand. [1]

46. On December 9, 2015, Chicago Mayor Rahm Emanuel acknowledged the existence of this Code of Silence within the Chicago Police Department in a public speech to the City Council.

47. City Policy makers have been aware of these practices and customs well prior to 2015, and certainly cannot claim that they have not been on notice since then.

48. In 2016, the City's Police Accountability Task Force made certain "Overarching Findings" that there was a "racist mentality" within the Chicago Police Department that the "ends justify the means" and that "the collective bargaining agreements between the police unions and the City have essentially turned the Code of Silence into official policy."

49. On January 13, 2017, the United States Department of Justice Civil Rights Division ("DOJ") issued a report at the conclusion of a 13-month investigation into the policies and practices of the Chicago Police Department.

50. The 2017 DOJ investigation found "Systemic deficiencies" by the City of Chicago through its subordinate agencies the CPD and IPRA, including "the failure to review and investigate officer use of force [which] has helped create a culture in which officers expect to use force and not be questioned about the need for or propriety of that use."

---

[1] https://beta.cpdp.co/ Citizen Police Database Project of the Chicago Invisible Institute.

51. The 2017 DOJ investigation of the Chicago Police Department also concluded that "CPD has engaged in a pattern or practice of unreasonable force in violation of the 4th Amendment and that the "deficiencies in CPD's training, supervision and accountability and other systems have contributed to that pattern or practice."

52. The 2017 DOJ investigation of the Chicago Police Department also concluded that "CPD has engaged in a pattern or practice of unreasonable force in violation of the 4th Amendment and that the "deficiencies in CPD's training, supervision and accountability and other systems have contributed to that pattern or practice."

53. However, Jeff Sessions, the United States Attorney General at the time of the report, announced that his office would not support the use of a consent decree to enforce structural changes in the CPD—rendering its conclusions largely toothless.

54. The City of Chicago did not step in any meaningful or binding way—offering little more than acknowledgment and unenforceable aspirational goals.

55. The CPD rank and file itself, feeling aggrieved and entitled to continue in the old abusive ways, even in an era of pervasive video evidence, elected John Catanzara as their union president in 2019.

56. John Catanzara, who won in a landslide while stripped of his police powers *is* the face of Chicago policing culture.

57. This incident, occurring in the Spring of 2019, was part of the building crescendo of police officer lawlessness and vigilantism which peaked nationally in the Summer of 2020 with the death of George Floyd, and the violence in nearby Kenosha, Wisconsin.

58. Nothing has changed. The CPD frequently engage in "slow-downs" when their feelings are hurt by the public's correct perception of the lack of accountability and the CPD's see-no-evil culture.

59. In any other profession, someone refusing to do their critical job because they do not feel appreciated enough would be a firing offense.

60. For thousands of Chicago Police officers this is a routine practice, which is met by shrugs of indifference by City policy makers.

61. Similar and recent accounts of undisciplined and brazen police misconduct, much of it on video or audio, have been recorded in *Spearman et. al v. Elizondo et. al,* Northern District Case No. 15 CV 7029; the shooting incident involving LaQuan McDonald; and *Armani Russell v. City of Chicago, et. al.,* Cook County Case No. 2019 L 7031 and other instances where police have responded to misconduct with an us against them mentality in the city's poor and minority majority neighborhoods.

62. The City's interest in addressing its dangerous system does not go beyond image conscious posturing, which belies the ground level policies and practices.

63. The *de facto* policies including the "police code of silence" are interrelated and exacerbate the effects of each other and said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged the subject Defendants to conduct the aforesaid acts against Plaintiff and therefore acted as the moving force and were, separately and together, direct and proximate causes of the injuries to Plaintiff.

64. The *de facto* policies including the "police code of silence" were carried out with a conscious disregard for the rights and safety of Plaintiff, thereby justifying the award of

exemplary and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.

### Count II
### 42 U.S.C. Section 1983
### Fourth Amendment – Excessive Force against both Defendant Officers

65. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

66. The actions of Defendant Officers as detailed above, constitutes unreasonable, unjustifiable, and excessive force against Plaintiff; thus, violating Plaintiff's rights under the Fourth Amendment to the United States Constitution.

67. As a result of the Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff suffered injury including physical, financial and emotional harm.

### Count III
### 42 U.S.C. Section 1983
### Fourth Amendment -- Illegal Search and Seizure and False Arrest against Defendant Officers

68. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

69. The search, seizure, and arrest of the Plaintiff; performed willfully, wantonly and unreasonably by Defendant Officers, as detailed above, was in violation of plaintiff's right to be free of unreasonable searches and seizure and false arrest under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

70. As a proximate result of the above-detailed actions of Defendants, Plaintiff suffered injuries including pain and suffering, emotional distress and mental anguish.

71. As a result of the Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff suffered injury

including physical, financial and emotional harm.c

## Count IV
## 42 U.S.C. § 1983
## Fourth Amendment – Failure to Intervene Both Defendants and Unknown Officers

72. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

73. As described more fully in the preceding paragraphs, during the constitutional violations described herein, one or more of the Defendant Officers stood by without intervening to prevent the misconduct described in this Complaint.

74. As a result of the Defendant Officers' failure to intervene, Plaintiff suffered pain and injury, including emotional anguish, humiliation, fear, anxiety, and the loss of Plaintiff's liberty, as is more fully described throughout this Complaint.

## Count V
## Illinois Malicious Prosecution

75. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

76. As more fully stated above, Defendant Officers caused criminal proceedings against Plaintiff to be commenced with malice, without probable cause, and knowing that Plaintiff was not guilty of the crime for which she had been charged.

77. Plaintiff was acquitted of all charges in a manner indicative of Plaintiff's innocence which fully and finally terminated the case in Plaintiff's favor.

78. As a direct and proximate result of this illegal and malicious conduct, Plaintiff has suffered extensive damage, including but not limited to physical, emotional, and economic damages.

## Count VI
### Indemnification – City of Chicago - 745 ILCS 10/9-102

79. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

80. At the time of the events described above, the Defendant Officers were employed by the City of Chicago.

81. The Defendant Officers committed the acts alleged above under color of law and within the scope of their employment as employees of the City of Chicago.

## Count VII
### Respondeat Superior

82. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

83. In committing the acts alleged in the preceding paragraphs, the Defendant Officers were employed by and acting as agents of the City of Chicago.

84. Defendant City of Chicago is liable as principal for all torts committed by its agents.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages and because these defendants acted maliciously, wantonly, or oppressively, punitive damages against the individual Defendants in their individual capacities plus the costs of this action and attorney's fees, and for such other and additional relief as this court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

                                                    Respectfully submitted,

                                                    /s/ Christopher Smith
                                                    Attorney for Plaintiff

Christopher R. Smith
Christopher Smith Trial Group, LLC
One North LaSalle, Suite 2000
Chicago, IL 60602
312.432.0400